UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CASS INFORMATION SYSTEMS, INC., and CASS COMMERCIAL BANK | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Cause No. 4:14-cv-735 (JCH) |
| FEDERAL INSURANCE COMPANY. | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Federal Insurance Company's ("Federal") Motion to Dismiss Plaintiffs' Complaint. (ECF No. 19). The Motion has been fully briefed and is ready for disposition.

Plaintiffs Cass Information Systems ("Cass") and Cass Commercial Bank ("Cass Bank") initiated this action by filing a Complaint with this Court on April 11, 2014. (Complaint, ECF No. 1). The Complaint alleges that "Cass Bank began a business relationship with Capital Technology & Leasing LLC ("CT&L")" at some point in 2010. (Complaint ¶ 6). "As part of its business, CT&L assists in the origination of office and computer equipment leases with third party companies, including arranging financing to purchase the equipment covered by the terms of the respective leases." *Id.* ¶ 7. In or about November 2011, CT&L entered five equipment leases with five different companies, and Cass Bank financed CT&L's purchase of the leased equipment. *Id.* ¶¶ 8, 14. "As part of the overall transaction, CT&L assigned each of the Leases to Cass Bank pursuant to the terms of certain assignment agreements, whereby Cass Bank acquired

1

all of CT&L's rights and interests enumerated under the Leases ("Lease Assignments")." *Id.* ¶ 9. Eventually, all of the lessees defaulted on their leases, and the Plaintiffs "determined that the purported signatures that appear on the Leases, Notice of Lease Assignment and Equipment Receipts are forged signatures." *Id.* ¶¶ 15, 16.

At the center of the dispute between the parties is a Community Bank Bond (the "Bond") that Cass purchased from Federal. *Id.* ¶ 18. Plaintiffs allege that under the Bond, "Federal agreed to pay Cass and its subsidiaries [including Cass Bank] for certain losses, including losses under Insuring Clause 5 which covers, among other things, forgery related to 'Evidence of Debt' and a 'Security Agreement.'" *Id.* ¶ 20. Plaintiffs filed a claim with Federal seeking compensation for losses they sustained as a result of the forged leases. *Id.* ¶¶ 24-25. Federal denied Plaintiffs' claim. *Id.* ¶ 26.

Plaintiffs then filed the Complaint, which contains two counts: (1) breach of contract against Federal based on the denial of Plaintiffs' claim; and (2) vexatious refusal to pay based on the theory that Federal denied payment "without reasonable cause or excuse . . . ." (Complaint at 5-7). Federal now seeks dismissal of the Complaint.

## **MOTION TO DISMISS STANDARD**

When ruling on a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court must view the allegations in the Complaint in the light most favorable to Plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court must also "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). A Rule 12(b)(6) motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face*." Bell Atlantic Corp. v. Twombly*, 127 S. Ct.

2

1955, 1974 (2007). Stated differently, to survive a Rule 12(b)(6) motion, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 1965 (citations omitted).

## **DISCUSSION**

Federal contends that based on the plain language of the Bond, Plaintiffs cannot demonstrate that they are covered by Insuring Clause 5. In particular, it contends that Plaintiffs are not covered by the "Evidence of Debt" provision because the leases are not evidence of a debt between Cass and a "customer" of Cass, as that term is defined in the Bond. (Federal Support Memo, ECF No. 20, at 9-12). Federal also contends that Plaintiffs are not covered under the "Security Agreement" provision because the leases are not Security Agreements as defined by the Bond. *Id.* at 12-14. Federal further asserts that because Plaintiffs have failed adequately to allege coverage under the Bond, both their breach of contract and vexatious refusal to pay claims must be dismissed. *Id.* at 15.

In general, the rules of insurance-contract interpretation apply to the interpretation of a bank bond like the one at issue. In Missouri, the language in an insurance policy must "be given its plain meaning. If the language is unambiguous the policy must be enforced according to such language." *Robin v. Blue Cross Hosp. Serv., Inc.*, 637 S.W.2d 695, 698 (Mo. 1982) (*en banc*) (internal citations omitted). Further, in situations where contract language is unambiguous, "rules of construction are inapplicable . . . ." *Mansion Hills Condominium Ass'n v. Am. Family Mut. Ins. Co.*, 62 S.W.3d 633, 637 (Mo. Ct. App. 2001). If Plaintiffs here have made a plausible claim that either the "Evidence of Debt" or "Security Agreement" provision applies to them, it would be inappropriate to dismiss their Complaint.

3

The Bond covers certain losses resulting from certain actions taken by an assured. One provision of the Bond covers

> '[l]oss resulting directly from the ASSURED having, in good faith, for its own account or the account of others:
>
> A. acquired, sold or delivered, or given value, extended credit or assumed liability, in reliance on any original:
>
> . . .
> (5) **Evidence of Debt**
> . . .
> (7) **Security Agreement**
> . . .
>
> which
>
> a. bears a **Forgery** . . . .'

(Federal Support Memo at 8-9 (emphasis in original) (quoting Bond, ECF No. 20-1, at 3-4)). Evidence of Debt is defined as "'an instrument, including a Negotiable Instrument, executed by a customer of the ASSURED and held by the ASSURED.'" *Id.* at 10 (emphasis in original) (quoting Bond at 19).

As noted above, Federal contends that, as a matter of law, Plaintiffs are not covered under the Evidence of Debt provision because the lessees are not their "customers." More specifically, Federal maintains that the original lessor was CT&L, rather than Cass Bank, and that the lessees can therefore only be considered CT&L's customers. (Federal Support Memo at 10-11; Federal Reply, ECF No. 33, at 6). Plaintiffs respond that "[t]he Complaint explains that '[a]s part of the overall transaction, CT&L assigned each of the Leases to Cass pursuant to the terms of certain assignment agreements . . . .'" (Plaintiff Response, ECF No. 30, at 10 (quoting Complaint ¶ 9)). The fact that the original lease and subsequent assignment were part of the same transaction, according to Plaintiffs, means that the lessees were customers of Cass Bank. *Id.*

4

Resolution of whether the lease assignments were part of a single transaction that included the signing and financing of the leases is beyond the scope of this Motion. If, however, there was only one transaction to which Cass Bank, CT&L, and the lessees were all parties,[1] then the lessees were customers of Cass Bank. Federal concedes in its Reply that the lessees were customers of CT&L because they entered into lease agreements with CT&L. (Federal Reply at 6 ("The leases were executed by customers of CTL.")). By reasonable extension of Federal's understanding of the unambiguous meaning of "customer," the lessees must be considered customers of Cass Bank if Cass Bank was intended by all the parties at the outset to act as lessor.[2] Plaintiffs have therefore stated a plausible claim for relief, and Federal's motion to dismiss must be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Federal Insurance Company's Motion to Dismiss Plaintiffs' Complaint, (ECF No. 19), is **DENIED**.

Dated this 18th day of November, 2014

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[1] The Court notes that the Complaint alleges the lease agreements were forged, and the "lessees" are mentioned with this fact in mind.

[2] Federal attempts to escape this conclusion by contending that "executed," which is a qualifier of "customer" in the definition of Evidence of Debt, means "the signor had to be a customer at the time he/she executed the document." (Federal Support Memo at 11 (citing *Sterling Bank & Trust, F.S.B. v. Travelers Cas. & Sur. Co. of Am.*, 02-74579 (E.D. Mich. Sept. 8, 2003)). This argument fails for two reasons. First, to read "executed by a customer" as "executed by a customer contemporaneously with becoming a customer" would be to add words to the insurance contract, which the Court cannot do. Second, even if the Court could accept this definition, it is beyond the scope of this Motion to determine when the lessees became customers of Cass Bank.