| | | |
|---|---|---|
| CASS INFORMATION SYSTEMS, | ) | |
| INC., and | ) | |
| CASS COMMERCIAL BANK, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     v. | ) | Case No. 4:14-cv-00735-JCH |
| | ) | |
| FEDERAL INSURANCE COMPANY, | ) | |
| | ) | |
|     Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Federal Insurance Company's ("Federal") Motion for Summary Judgment (ECF No. 67), and Plaintiffs Cass Information Systems, Inc.'s and Cass Commercial Bank's (together, "Cass") Motion for Summary Judgment as to Count I (ECF No. 71). The Motions have been fully briefed and are ready for disposition.

## BACKGROUND

The following facts are essentially undisputed. In 2010, Cass entered into a business relationship with Capital Technology & Leasing, LLC (CT&L)—a commercial lessor of electronic equipment. As part of their business arrangement, CT&L originated equipment leases with third-party companies, Cass funded the purchase of the equipment for the leases, and CT&L assigned its rights and interests in the leases to Cass.

Between 2011 and 2012, CT&L entered into nine lease agreements (collectively, the "Leases") with individuals purporting to represent five companies, and Cass provided funding for the equipment (hereinafter, the "Claimed Transactions"). CT&L assigned its rights and interests in the Leases to Cass. Eventually, Cass stopped receiving payments in connection with the Claimed Transactions, and in December 2012, the companies (hereinafter, the "Lessees")

1

were sent default notices.  Cass later determined that the Leases had been signed by individuals who were either not who they claimed to be, or not associated with the Lessees in any capacity. Apparently, the Lessees were defunct entities that had ceased business operations some time in 2010 and had been fraudulently reinstated, and—according to Cass and Federal—the equipment that was purportedly financed never existed.

Meanwhile, in October 2012, Cass purchased a Community Bank Bond (hereinafter, the "Bond") from Federal.  (Def. Ex. 1, ECF No. 69.1.)  Pursuant to Insuring Clause 5 of the Bond, Federal agreed to provide coverage for the following:

> Loss resulting directly from the ASSURED having, in good faith, for its own account or the account of others:
>
> A.  acquired, sold, or delivered, or given value, extended credit or assumed liability in reliance on any original:
>
> …
> (5) **Evidence of Debt**, [or]
> …
> (7) **Security Agreement**
> …
>
> which
>
> a.  bears a **Forgery**
> …
>
> Actual physical possession, and continued actual physical possession if taken as collateral, of [the Evidence of Debt or Security Agreement] by the ASSURED…is a condition precedent to the ASSURED having relied on such items.

*Id.* at 7-8.  The Bond defines "**Evidence of Debt**" as "an instrument, including a **Negotiable Instrument**, executed by a customer of the ASSURED and held by the ASSURED, which in the regular course of business is treated as evidencing the customer's debt to the ASSURED."  *Id.* at 23.  The Bond defines "**Security Agreement**" as "an agreement which creates an interest in personal property or fixtures and which secures payment or performance of an obligation."  *Id.* at

28.  The Bond defines "**Forgery**" as "the signing of the name of another natural person with the intent to deceive but does not mean a signature which consists in whole or in part of one's own name, with or without authority, in any capacity for any purpose."  *Id.* at 25.  The Bond does not define the term "customer."

Upon determining that it had incurred over two million dollars in loss in connection with the Claimed Transactions, Cass submitted an Insurance Claim and a Proof of Loss to Federal. (Plf. Ex. D, ECF No. 73.4.)  Federal ultimately denied coverage, and in April 2014, Cass filed the instant suit asserting claims of breach of contract and vexatious refusal to pay.  (Compl., ECF No. 1.)

In June 2014, Federal moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(6), arguing that Cass could not demonstrate coverage under Insuring Clause 5 because the Leases were neither evidence of a debt between Cass and a "customer" of Cass, nor security agreements, as defined by the Bond.  (ECF Nos. 19-20.)  In a November 2014 Order, this Court denied Federal's motion, concluding that if there was only one transaction that included the signing and financing of the Leases, to which Cass, CT&L, and the Lessees were all parties, then the Lessees were customers of Cass, but that resolution of whether the lease assignments were part of a single transaction was beyond the scope of the motion to dismiss.  (ECF No. 43 at 4-5.)

As mentioned above, Cass and Federal have moved for summary judgment.  (ECF Nos. 67, 71.)   In their supporting briefs and responses, the parties continue to dispute whether the Leases are evidence of debt or security agreements, as defined by the Bond.  The parties also dispute whether Insuring Clause 5 provides coverage in the event Cass extended credit against worthless collateral (i.e., the allegedly non-existent equipment).  (ECF Nos. 68, 72, 77, 80.)

# SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A court is not 'to weigh the evidence and determine the truth of the matter but [instead should] determine whether there is a genuine issue for trial.'" *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 272 (8th Cir. 1992) (quoting *Anderson*, 477 U.S. at 249). A trial court "should act with great caution and may deny summary judgment when it believes 'the better course is to proceed with a full trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 255).

# DISCUSSION

In order for Cass to recover on its breach of contract claim, the evidence must show, among other things, that the Leases are documents to which Insuring Clause 5 extends coverage, and that Cass extended credit in reliance upon the original Leases. Upon review of the parties' Motions and the briefs and materials submitted in support thereof, the Court finds that there are genuine issues of material fact in dispute that preclude the Court from granting either party summary judgment. These factual issues include, but are not limited to, (1) whether the Leases and lease assignments were executed as part of a single transaction (such that the Lessees were customers of Cass and the Leases "Evidence of Debt"), and (2) whether Cass relied upon the Leases in extending credit for the purchase of the equipment. The Court cannot, without more information and without weighing the circumscribed factual record before it, resolve these

factual disputes.  Therefore, the Court is unable to conclude as a matter of law whether or not the Leases fall within the scope of coverage under Insuring Clause 5.

As the Court explained in its November 2014 Order, if the lease assignments were part of a single transaction that included the signing and financing of the leases, to which Cass, CT&L, and the Lessees were all parties, then the Lessees were customers of Cass.  According to a representative of Cass, "[i]n order for each lease to close, Cass, CT&L, and the lessees all needed to execute all of the lease-related documents"; all the lease-related documents would be forwarded to Cass's loan servicing department before funds were "sent off"; each transaction was "a three-party transaction involving CT&L…Cass, and the [L]essee"; and "[w]ithout any one of the three, there would be no Leases."  The representative further stated that Cass loaned funds for the purchase of the equipment to the Lessees, and that "the Lessees paid Cass the amounts owed under the Leases."  (Def. Ex. 2, ECF. No. 69.2 at 7, 10; Plf. Ex. A, ECF No. 73.1 ¶¶ 9, 15, 21.)

However, also according to the representative, Cass never communicated directly with any of the Lessees, Cass never saw or appraised the equipment, and the Lessees remitted their payments directly to CT&L.  (Def. Ex. 2 at 7-9, 16.)  In combination with the absence of any evidence indicating that Cass executed separate loan agreements with the Lessees, Cass's lack of interaction with the Lessees gives the appearance that the lease transactions and the funding transactions were not connected.  In addition, the Proof of Loss that Cass submitted to Federal states that "CT&L would have the leases assigned to Cass as security for the loan," and that "Rockford and Thermal Management [was] the recipient of the majority of the loan proceeds and [was] to use the funds to purchase the equipment for [the Lessees]."  These statements imply that that the loans were advanced to CT&L, not to the Lessees.  (Plf. Ex. D at 3-4.)  Also, the lease

assignments were signed anywhere from one to several days after the Leases were signed, which demonstrates a lack of contemporaneity in the signing and financing of the Leases. (Def. Exs. 3-25, ECF Nos. 69.3-69.25). Moreover, although Cass purportedly did not advance the funds for the purchase of equipment until after all of the lease-related documents had been signed, the lease assignments state that "[t]he Equipment has been delivered to Lessee…" (Def. Exs. 3-11.)

Based on the forgoing, the Court cannot determine as a matter of law whether the Lessees were customers of Cass, let alone form a coherent picture of how the lease transactions operated.

With respect to whether Cass relied upon the Leases in extending credit for the purchase of the equipment, Cass's representative stated that, "[b]ut for the Leases, Cass would not have funded any of the purported purchases," and that Cass obtained and held all of the documents, including the original Lease schedules, prior to funding any leases." (Plf. Ex. A ¶¶ 16, 26.) However, also according to the representative, the loans were "approved" before CT&L "m[et] with the lessee to have them sign [all of the closing] documents," and he was "not certain" whether there was "any way to tell whether Cass did not receive all of the documents prior to funding." (Def. Ex. 2 at 10; Def. Ex. 38, ECF No. 78.1 at 20.) Similarly, email exchanges between the representative and an agent of CT&L indicate that several of the loan requests were "approved" prior to when the Leases were executed. (Def. Ex. 40, ECF No. 78.3.) In addition, there is no evidence conclusively showing when Cass came into possession of the original Leases.

In view of the foregoing, the Court cannot determine as a matter of law whether Cass relied on the Leases in extending credit for the purchase of the equipment.

As to the parties' dispute regarding whether Insuring Clause 5 extends coverage where a bank extends credit against worthless collateral, the Court notes that neither party has presented

evidence conclusively showing that the equipment associated with the Claimed Transactions did not in fact exist. The only evidence in the summary judgment record that supports the contention that there was no equipment consists of the following deposition testimony of another Cass employee:

> [O]n…January 3rd, I personally flew to Chicago and drove around to each of the five companies who were the obligor on the [L]eases, and I went around to each one, and really discovered that I didn't believe the companies were valid, and if they ever were.
> …
> [The Lessees] had rented space. They all had their office suites, which I was not allowed to go in, so they had, you know, they had something there, but I wouldn't have thought that it was the business it purported to be.
> …
> I did not [see any equipment]. But on the other hand, I didn't get in any of the office suites.

(Def. Ex. 26, ECF No. 69.26 at 4, 6.) This evidence does not conclusively show that the equipment did not exist, and the Court therefore declines to address the parties' arguments on the merits.

On the record before the Court, neither party has established beyond genuine dispute their right to judgment with such clarity as to leave no room for controversy, nor have they established beyond genuine dispute the other party's inability to prevail under any discernable circumstance. *See Vette Co v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980).[1] Thus, the Court concludes that the better course is to proceed with a trial. Therefore, Cass's and Federal's Motions are denied.

## **CONCLUSION**

Accordingly,

---

[1]The Court also concludes that summary judgment is inappropriate as to Cass's vexatious refusal to pay claim, since the outcome of that claim inevitably depends on the success of Cass's breach of contract claim.

**IT IS HEREBY ORDERED** that Defendant Federal Insurance Company's Motion for Summary Judgment (ECF No. 67) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs Cass Information Systems, Inc.'s and Cass Commercial Bank's Motion for Summary Judgment as to Count I (ECF No. 71) is **DENIED**.

Dated this 9th day of October, 2015.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE